IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN SCOTT, )<br>)<br>         **Plaintiff,** )<br>vs. )<br>)<br>NATIONAL TENANT NETWORK, INC., )<br>)<br>         **Defendant.** )<br>) | Civil Action No. |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*, *as amended*. In violation of the FCRA section 1681e(b), Defendant does not maintain policies and procedures to assure the maximum possible accuracy of the information on the consumer reports that it sells. As a result, Defendant sold a consumer report about Plaintiff that contained derogatory tenant eviction history relating to another consumer. Additionally, in violation of FCRA section 1681g(a)(2), Defendant systemically misrepresents to consumers the source of the public record information (such as civil judgments, eviction records, tax liens and bankruptcies) that it places on the consumer reports that it sells to landlords. Defendant thus deprives consumers of valuable congressionally-mandated information and makes it more difficult for consumers such as Plaintiff to correct errors relating to these public records that are caused by Defendant and/or its private vendor sources. As a result, Plaintiff was unable to adequately verify and/or dispute the information that Defendant sold to his potential landlords.

### II. JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.   PARTIES

4. Plaintiff John Scott is an adult individual who resides in Philadelphia, PA.

5. Defendant National Tenant Network, Inc. (NTN) is a consumer reporting agency that regularly conducts business in the Eastern District of Pennsylvania and which has a place of business located at 188 Fries Mill Road, Blackwood, NJ 08012.

## IV.   FACTUAL ALLEGATIONS

6. Defendant has been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's history as a tenant to third parties (inaccurate information).

7. The inaccurate information includes a false tenant history labeling the Plaintiff as a person with a long history of evictions, and personal identifying information. Specifically, inaccurate information includes, but is not limited to, numerous evictions that do not belong to Plaintiff, but belong instead to another consumer who has the same or similar name as Plaintiff.

8. The inaccurate information negatively reflects upon the Plaintiff, and misidentifies Plaintiff as a person who has a history of evictions. It appears that Defendant has confused Plaintiff with a person with a similar name and has, as a result of its unreasonable procedures, mixed Plaintiff's tenant history with that of a consumer with a long history of evictions.

9. Defendant has been reporting the inaccurate information through the issuance of false and inaccurate consumer information and consumer reports that it has disseminated to persons and potential landlords, both known and unknown.

10. Plaintiff's consumer report and file has been obtained from Defendant and has been reviewed by prospective landlords and the inaccurate information has been a substantial factor in

precluding Plaintiff from obtaining a rental property. Plaintiff's consumer reports have been obtained from Defendant by such third parties from at least April 2014 through the present.

11. Specifically, in or around March 2014, Plaintiff John Scott applied to rent an apartment at The Townhomes of Regency Place (Regency Place) in Philadelphia, PA.

12. In connection with Mr. Scott's application, Regency Place ordered a consumer report about him from NTN.

13. Defendant assembled, prepared and sold to Regency Place a consumer report about Mr. Scott on or about March 29, 2014.

14. The report inaccurately included six items of public record information. Specifically, the report contained six records of eviction from properties where Plaintiff Scott has never resided.

15. As a result of Defendant's inaccurate report, Regency Place denied Mr. Scott's rental application.

16. In an effort to address this issue, Mr. Scott requested his file disclosure from Defendant, on several occasions between March and June 2014.

17. Eventually in 2014 Plaintiff Scott saw a copy of his NTN file disclosure.

18. The file disclosure Defendant sent to Mr. Scott contained the six eviction records that were reported to Regency Place.

19. The file disclosure indicates that the eviction records related to properties in Philadelphia County, but does not disclose the court(s) in which the eviction actions were filed.

20. Defendant did not obtain these eviction records directly from any court or government entity.

21. Rather, Defendant obtained these eviction records from one of its business partners and/or private vendors.

22. Nevertheless, and pursuant to its systematic practice, Defendant failed to disclose to Plaintiff any information about the court which issued the six eviction records, or about Defendant's vendor, the true source of the records.

23. Defendant's inaccurate and incomplete disclosure impaired Mr. Scott's ability to correct the erroneous information by preventing him from going to the source of inaccurate information.

24. Upon information and belief, Defendant obtains its information about bankruptcies, civil judgments, eviction records, and tax liens (*i.e.*, "public record" information) from IntelliCorp Records, Inc. (IntelliCorp) and a variety of other private business that it calls "vendors," which furnish such information to national CRAs.

25. Defendant does not obtain actual public records from courthouses or government offices.

26. Nevertheless, on the reports that it provides to consumers, NTN does not identify the source(s) of the public record information contained on the reports.

27. The public record information that Defendant receives from its vendors and data miners is not the actual court or government records. Rather it is a distilled version of those records, which does not include all of the information available at the actual courthouses or government offices where the true records are housed.

28. Defendant knows that both it and its records vendors such as IntelliCorp make mistakes in the distilled public records information that is acquired for the purposes of credit reporting.

29. These distilled records frequently have numerical and other factual errors, do not contain the most updated status of the public records, invert the debtor and creditor, and are placed upon the wrong consumer's report.

30. The FCRA unambiguously requires CRAs such as Defendant to "clearly and accurately disclose to the consumer" who requests his or her credit file "the sources" that supplied any "information" to the CRA about that consumer. 15 U.S.C. § 1681g(a)(2). Third Circuit precedent also makes it plain that a CRA must clearly and accurately disclose to consumers all information that it has about them. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010).

31. Disclosure of the true source of a CRA's information is vital so that certain credit reporting errors that originate at the source can be corrected, and so that consumers always know who is furnishing important credit information about them.

32. Nevertheless, and despite the clear mandate of FCRA section 1681g(a)(2), Defendant never discloses to consumers the true source of the public records information that it collects and reports about them.

33. Defendant conceals that its sources for public record information are private data miners or vendors that supply to it only incomplete information, which can be inaccurate or not up to date.

34. In this regard, Defendant is more interested in maintaining the appearance that it receives actual public records from true government sources and in protecting its low-cost private sources of public record data than in disclosing to consumers vital information that Congress required CRAs to disclose in FCRA section 1681g(a)(2).

35. In addition to imposing responsibilities regarding disclosures to consumers, the FCRA requires CRAs providing consumer reports to third parties, including for tenant-screening purposes, to maintain reasonable procedures to assure the maximum possible accuracy of the information contained in the reports. 15 U.S.C. § 1681e(b).

36. Defendant's practices not only violate the FCRA as a matter of law, they exact serious consequences on consumer tenant-applicants and interstate commerce. When consumers such as Plaintiff, who have been inaccurately reported as having been evicted, they are viewed as less desirable tenant-applicants and more likely not to be approved for housing by the landlords who pay Defendant for such reports.

37. Further, such consumers are prejudiced in their ability to adequately determine whether the information is being properly reported. Pursuant to Defendant's practice, by the time the consumer is made aware of the reporting of adverse public record, it is too late to correct the contents of the report because it has already been sold to the landlord by the Defendant and has formed the basis of a decision whether to provide housing to the applicant.

38. As a result of Defendant's conduct, Plaintiff suffered actual damages in the form of lost rental opportunities, harm to credit reputation, and emotional distress, including humiliation and embarrassment.

39. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

40. At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

### VI.     Claims

### Count One – FCRA Section 1681e(b)

41.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

42.     At all times pertinent hereto, Defendant was a "person" and "consumer reporting agency" as those terms are defined by sections 1681a(b) and (f) of the FCRA.

43.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by section 1681a(c) of the FCRA.

44.     The above-mentioned credit reports are "consumer reports" as that term is defined by section 1681a(d) of the FCRA.

45.     Pursuant to section 1681o and 1681n of the FCRA, Defendant is liable to Plaintiff for failing to maintain reasonable procedures to assure the maximum possible accuracy of the report it prepared about him, in violation of section 1681e(b) of the FCRA.

46.     The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendant is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

### Count Two – FCRA Section 1681g(a)(2)

47.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

48.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully violating the FCRA by failing to accurately and completely disclose the

true source of its public records information in consumer file disclosures, in violation of FCRA section 1681g(a)(2).

49. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendant is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## VII. Jury Trial Demand

50. Plaintiff demands trial by jury on all issues so triable.

## VIII. Prayer For Relief

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

(a) Actual damages;

(b) Statutory damages;

(c) Punitive damages;

(d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n and 1681o;

(e) An order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's consumer reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer information;

(f) An order directing that Defendant send to all persons and entities to whom it has reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected consumer report; and

(g) Such other and further relief as may be necessary, just and proper.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

BY:    _/s/ Mark D. Mailman_
MARK D. MAILMAN, ESQUIRE
JOHN SOUMILAS, ESQUIRE
GEOFFREY H. BASKERVILLE, ESQUIRE
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Attorneys for Plaintiff

Dated: October 14, 2014

9